UNITED STATES OF AMERICA
UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

FREDDY HARDRICK #440921,

    Plaintiff,

v.                                      Case No.  2:17-cv-00029

                                            Hon. Paul L. Maloney

DUNCAN MACLAREN, et al.,

    Defendants.
_____/

## REPORT AND RECOMMENDATION

This is a civil rights action brought by state prisoner Freddy Hardrick pursuant to 42 U.S.C. § 1983.  Plaintiff alleges that while confined at the Kinross Correctional Facility (KCF) Defendant Chaplain Linda McQuiggin denied him Ramadan meals in 2016 in violation of his First Amendment right to practice his religious beliefs.  Plaintiff seeks compensatory and punitive damages and equitable relief.  Defendant filed a motion for summary judgment. (ECF No. 26).  Plaintiff filed a response. (ECF No. 35).  Plaintiff filed a motion for summary judgment. (ECF No. 32).  Defendant filed a response.  (ECF No. 40).

Plaintiff is an observant Muslim who is required to participate in the Ramadan fast.  The MDOC has recognized Plaintiff's membership in the Nation of Islam since October 18, 2007, and Plaintiff has participated in the Ramadan fast.  In 2016, Defendant McQuiggin issued a Michigan Department of Corrections Memorandum, dated April 13, 2016, regarding the 2016 Ramadan fast.  The memorandum stated that KCF prisoners who are eligible for the Ramadan fast must sign-up for the fast no later than May 17, 2016. (ECF No. 27-2, PageID.127).  The

memorandum was posted at various locations in the prison. Plaintiff alleges that he never saw the memorandum.

Defendant McQuiggin had received a Michigan Department of Corrections memorandum, dated April 12, 2016, from Special Activities Coordinator Correctional Facilities Administrator David M. Leach, regarding the 2016 Ramadan fast. The memorandum stated in part:

> An appropriate staff person, usually the Chaplain, should have eligible prisoners who want to observe the Ramadan fast sign up to participate and receive the appropriate Ramadan meals. When prisoners sign up for the Ramadan fast they are to identify the appropriate meal type – Regular, Lacto-ovo, Vegetarian, or Vegan Ramadan Menu (the Vegan Ramadan Menu is only available to prisoners that are already receiving vegan religious meals). The Chaplain or appropriate staff person is to report to the CFA Special Activities Coordinator and the Trinity Food Service Director/Manager for their facility the number of prisoners for each meal type. This information is due no later than Friday, May 20, 2016.

(ECF No. 9, PageID.51).

Plaintiff learned from another prisoner that he was required to sign-up for Ramadan. In May of 2016, Plaintiff sent kites to Defendant McQuiggin requesting to participate in the Ramadan fast starting June 6, 2016. Defendant McQuiggin responded that Plaintiff had missed the sign-up deadline. Plaintiff spoke to unit block representatives Boudreaux #449302 and Palmer #212599, who had received similar complaints from other prisoners. Prisoners Boudreaux #449302 and Palmer #212599 approached Corrections Officer Moran, who phoned Defendant McQuiggin. Defendant McQuiggin told Officer Moran that she had sent out a policy memorandum to each housing unit setting forth the deadline. Plaintiff sent a note to Defendant

2

McQuiggin explaining that he never saw the memo and was not aware of the deadline. Plaintiff did not receive a response to his note.

Plaintiff states that housing unit block representatives Boudreaux #449302 and Palmer #212599 walked around the unit and collected the names of all the prisoners who were seeking to participate in the Ramadan fast. The block representatives took the names collected to the Warden Forum meeting, and submitted the names to Administrative Assistant David Mastaw. Mr. Mastaw indicated that he would submit the names to Defendant McQuiggin, and that they would be allowed to participate in the fast.

On June 6, 2016, the first day of the fast, Plaintiff walked over to the Ramadan meal line with his unit. Once there, Plaintiff discovered that his name and the names of several other inmates were not on the list. Plaintiff explained the situation to Captain Colvin who told Plaintiff that he could have a Ramadan meal if there were left over meals. Plaintiff states that the prisoners who were omitted from the list all received Ramadan meal bags and that the food steward recorded all their names and added them to the food count.

On June 7, 2016, Plaintiff had still not received an "itinerary" for Ramadan meals, which indicated that he had not been added to the list. When Plaintiff arrived for his meal, he and the other prisoners without an itinerary were being turned away by corrections officers. Plaintiff sought assistance from Captain Colvin, who stated that he did not have a problem accommodating him for Ramadan, but that he could not go over Defendant McQuiggin's head. Plaintiff was told that he needed to straighten things out with Defendant McQuiggin and that if he came back to the Ramadan meal line without an itinerary, he would receive a ticket for being out of place. Food Service Director Shawn McMullien told Plaintiff that accommodating Plaintiff would be no

3

problem, but that Plaintiff had to get Defendant McQuiggin to add his name to the list. Plaintiff never received a response from Defendant McQuiggin to his request to be added to the list.

Plaintiff tried to fast by sneaking food from the chow hall, but Plaintiff disposed of the food on several occasions because prisoners are not allowed to remove food from the chow hall. After one week of attempting to fast this way, Plaintiff began to experience headaches, extreme hunger, and problems with bowel movements due to lack of food. Consequently, Plaintiff was forced to give up fasting during Ramadan.

Summary judgment is appropriate only if the moving party establishes that there is no genuine issue of material fact for trial and that he is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-323 (1986). If the movant carries the burden of showing there is an absence of evidence to support a claim or defense, then the party opposing the motion must demonstrate by affidavits, depositions, answers to interrogatories, and admissions on file, that there is a genuine issue of material fact for trial. *Id.* at 324-25. The nonmoving party cannot rest on its pleadings but must present "specific facts showing that there is a genuine issue for trial." *Id.* at 324 (quoting Fed. R. Civ. P. 56(e)). The evidence must be viewed in the light most favorable to the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986). Thus, any direct evidence offered by the plaintiff in response to a summary judgment motion must be accepted as true. *Muhammad v. Close*, 379 F.3d 413, 416 (6th Cir. 2004) (*citing Adams v. Metiva*, 31 F.3d 375, 382 (6th Cir. 1994)). However, a mere scintilla of evidence in support of the nonmovant's position will be insufficient. *Anderson*, 477 U.S. at 251-52. Ultimately, the court must determine whether there is sufficient "evidence on which the jury could reasonably find for the plaintiff." *Id.* at 252. *See also Leahy v. Trans Jones,*

4

*Inc.*, 996 F.2d 136, 139 (6th Cir. 1993) (single affidavit, in presence of other evidence to the contrary, failed to present genuine issue of fact); *cf. Moore, Owen, Thomas & Co. v. Coffey*, 992 F.2d 1439, 1448 (6th Cir. 1993) (single affidavit concerning state of mind created factual issue).

Defendant moves for dismissal based upon qualified immunity. Government officials, performing discretionary functions, generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known. *Dietrich v. Burrows*, 167 F.3d 1007, 1012 (6th Cir. 1999); *Turner v. Scott*, 119 F.3d 425, 429 (6th Cir. 1997); *Noble v. Schmitt*, 87 F.3d 157, 160 (6th Cir. 1996); *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). An "objective reasonableness" test is used to determine whether the official could reasonably have believed his conduct was lawful. *Dietrich*, 167 F.3d at 1012; *Anderson v. Creighton*, 483 U.S. 635, 641 (1987). "Qualified immunity balances two important interests-the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably." *Pearson v. Callahan*, 129 S. Ct. 808, 815 (2009).

In making a qualified immunity determination the court must decide whether the facts as alleged or shown make out a constitutional violation or whether the right that was allegedly violated was a clearly established right at the time of the alleged misconduct. *Id.* at 816. If the court can conclude that either no constitutional violation occurred or that the right was not clearly established, qualified immunity is warranted. The court may consider either approach without regard to sequence. *Id*.

5

Prisoners do not lose their right to freely exercise their religion by virtue of their incarceration. *Cruz v. Beto*, 405 U.S. 319, 322, n. 2 (1972). Freedom of religion being a fundamental right, any regulation which infringes upon it must generally be justified by a "compelling state interest." *See*, *for example*, *Wisconsin v. Yoder*, 406 U.S. 205 (1972). However, as a prisoner, Plaintiff's constitutional rights are subject to severe restriction. *See*, *for example*, *Bell v. Wolfish*, 441 U.S. 520 (1979) (restriction on receipt of reading materials); *Hudson v. Palmer*, 468 U.S. 517 (1984) (privacy); *Wolff v. McDonnell*, 418 U.S. 539, 566 (1974) (right to call witnesses); *Richardson v. Ramirez*, 418 U.S. 24 (1974) (vote). *See*, *generally*, *Washington v. Harper*, 494 U.S. 210 (1990); *Turner v. Safley*, 482 U.S. 78 (1987); *O'Lone v. Estate of Shabazz*, 482 U.S. 342 (1987).

Rather, the standard by which prison regulations impinging on prisoner constitutional rights is judged is "reasonableness." *Turner*, 482 U.S. at 88-95; *Washington*, 494 U.S. at 223-25. In *Turner*, the Supreme Court expressly rejected any degree of "heightened scrutiny" in order to assure that "prison administrators . . . and not the courts . . . make the difficult judgments concerning institutional operations." *Id.* at 89, *quoting Jones v. North Carolina Prisoners' Union*, 433 U.S. 119 (1977).

In *Turner*, the court set forth four factors "relevant in determining the reasonableness of the regulation at issue." 482 U.S. at 89-91. First, there must be a "valid, rational connection" between the prison regulation and the legitimate governmental interest put forward to justify it. *Id.* at 89, *quoting Block v. Rutherford*, 468 U.S. 576, 586 (1984). Second, the reasonableness of a restriction takes into account whether there are "alternative means of exercising the right that remain open to the prison inmate." *Turner*, 482 U.S. at 90. Third, the

6

court should consider the "impact accommodation of the asserted constitutional right will have on guards and other inmates, and on the allocation of prison resources generally." *Turner*, 482 U.S. at 90. Finally, the existence or absence of ready alternatives of accommodating the prisoner's rights is relevant to reasonableness. *Turner*, 482 U.S. at 90. As stated by the court, this final factor "is not a 'least restrictive alternative' test." *Id.* at 90. "Prison officials need not show that *no* reasonable method exists by which [prisoners'] rights can be accommodated without creating bona fide [prison] problems." *O'Lone v. Estate of Shabazz*, 482 U.S. 342, 350 (1987).

    Defendant responded to Plaintiff's interrogatories regarding the deadline. Defendant stated that "[t]he deadline is for the Chaplains to gather all the information from prisoners of Muslim faith who wanted to participate in Ramadan and forward all the information on to [the] Special Activities Coordinator, including how many of each type of meal will be needed." (ECF No. 27-2, PageID.122-123). Defendant further stated that "[t]he State of Michigan does not provide an alternative means if the prisoner misses the deadline." (*Id*. at PageID.123). Defendant responded that she could not answer the important question of whether placing someone on the list after the deadline, could have a significant impact on other prisoners, guards or officials, or prison resources. *Id*. Defendant indicated that Islamic prisoners receive Ramadan meals if they transfer to the prison after the deadline. New converts to Islam after the deadline must wait until the next year before being eligible for Ramadan meals. (*Id*. at PageID.124).

    Defendant argues that Plaintiff had the opportunity to timely sign-up for the Ramadan meal, but failed to meet the deadline. According to Defendant, no other prisoner at KCF had this issue. Defendant has made no effort to explain why she imposed a rigid non-flexible deadline and why she could not accommodate Plaintiff's late request. Although, it seems obvious

7

that the prison would like to know the number of meals to prepare, it seems equally obvious that there exists some flexibility in meal service especially over the course of several days. The exact reasons for the rigid deadline are not a matter of record.

The 2016 Ramadan fast occurred between June 6 and July 5. On June 6, 2016, Plaintiff was able to receive a Ramadan meal, after all other prisoner's had been served who were on the list. Defendant has failed to explain why Plaintiff could not continue to receive leftover Ramadan meals after this date. Defendant's argument is that she refused to allow Plaintiff a Ramadan meal because he did not sign-up by her inflexible deadline, and that she based her deadline on prison policy. Defendant provides no explanation to support the need for such an inflexible deadline. Defendant has not attempted to satisfy any of the *Turner* factors. In the opinion of the undersigned, Defendant has failed to show that placing an inflexible barrier to Plaintiff's ability to exercise his First Amendment religious rights entitles her to qualified immunity from liability.

Plaintiff has also moved for summary judgment. It is undisputed that Plaintiff practices the Islamic faith and that he has received Ramadan meals each year that the MDOC recognized his faith except in 2016. Plaintiff argues that there was no penological justification to deny him Ramadan meals in 2016. Plaintiff points to two cases that support his argument. In *Reischauer v. Jones*, 2009 WL 232625; 2:06-cv-149 (W.D. Mich. Jan. 29, 2009) the Court issued an opinion on the plaintiff's religious rights claims after trial. In that case, the court explained that the prisoner missed the deadline to sign-up for Ramadan meals at KCF. The prisoner had changed his religious preference from Protestant to Muslim on August 5, 2003. Ramadan began on October 26, 2003, and ended on November 24, 2003. The prisoner first requested a Ramadan meal on

8

November 7, 2003, and was placed on the list despite his failure to meet the sign-up deadline. Plaintiff states that the fact that KCF has accommodated prisoners who made requests after the deadline, shows that no penological interest was served by denying him Ramadan meals in 2016.

The Seventh Circuit held that prison officials who had denied a prisoner Ramadan meals for the reason that the prisoner missed the sign-up deadline were not entitled to summary judgment on either the merits of the claim or based upon qualified immunity. *Conyers v. Abitz*, 416 F.3d 580 (7th Cir. 2005). The Seventh Circuit explained:

> The defendants offered the general explanation that they imposed the sign-up deadline to give the prison's food-service and segregation unit time to prepare and coordinate meal accommodation.
>
> The defendants also claim that they cannot be blamed for Conyers's failure to anticipate Ramadan in time to contact the chaplain on his own before the deadline. But they offered no evidence to explain the additional effort that would have been required to include Conyers in the fast. They rest instead on the rigid and unsupported assumption that a sign-up deadline like the one imposed is a reasonable administrative requirement under any circumstances. See *Freeman v. Arpaio,* 125 F.3d 732, 737 (9th Cir.1997) (requiring sign-in sheets for participation in religious activities was not a substantial burden on free exercise). Nothing in this record indicates that convenience and notice to prison staff justified the rejection of Conyers's request to participate in the fast, especially since he missed the notification deadline by just four days and in fact alerted the defendants that he desired to participate in the Fast of Ramadan two days before it began. It is notable in this connection that the prison was willing to accommodate Muslims transferred from other institutions after the notification deadline. See *Makin v. Colo. Dep't of Corr.,* 183 F.3d 1205, 1213–14 (10th Cir.1999) (holding that staff availability and proper allocation of resources were not sufficient reasons for refusing to permit Muslim inmates confined in segregation to participate in Fast of Ramadan); *Love v. Reed,* 216 F.3d 682, 690–91 (8th Cir.2000) (sanitary concerns and potential inmate discontent over providing another inmate with food to prepare and consume on the Sabbath were not sufficient penological interests); compare *Williams v. Morton,* 343 F.3d 212, 220–21 (3d

9

> Cir.2003) (simplified food service, security, and budgetary concerns are legitimate penological interests justifying substitution of vegetarian meals for Halal meals with meat).
>
> The defendants also urge us to affirm on the basis of qualified immunity; in their view, they "could not have been expected to know that not providing [Conyers] with advance written notice of the sign-up deadline would violate his freedom of religion." But this formulation misapprehends the nature of Conyers's free-exercise claim. The defendants argue only that Conyers was responsible for contacting the prison chaplain, but they present no evidence that Conyers knew that there *was* a sign-up deadline. They have tried all along to fault him for not realizing on his own that Ramadan was approaching. But, of course, he did realize that Ramadan was about to start, and he asked to participate in the fast before it commenced. The relevant inquiry is whether, at the time the defendants refused Conyers's request, the law was clearly established that prison officials must have a legitimate penological interest before imposing a substantial burden on the free exercise of an inmate's religion, even when that inmate is in disciplinary segregation. We have held, in the specific context of Muslim inmates who were denied pork-free meals while confined in disciplinary segregation, that prison officials must demonstrate a legitimate penological objective for decisions that impede religious exercise. *Hunafa v. Murphy,* 907 F.2d 46, 47 (7th Cir.1990); see also *McEachin v. McGuinnis,* 357 F.3d 197, 204 (2d Cir.2003) (free exercise is violated when generally applicable prison policies fail to accommodate segregated inmate's religious dietary requirements). So that brings us back to the defendants' asserted interest and the insubstantial evidence they offered to support it.

*Id*. at 585-586.

Plaintiff has asserted that other officers at KCF were willing to accommodate him and that Defendant McQuiggin acted unreasonably by disallowing accommodation. In the opinion of the undersigned, whether Plaintiff is entitled to summary judgment is a close question in this case. Genuine issues of fact remain as to why Defendant McQuiggin refused to accommodate Plaintiff's request. Plaintiff has presented some facts that show he was denied his First Amendment rights without a compelling reason. However, the facts of this case are not developed

10

enough to allow the Court to compare this case to *Reischauer*. The issues presented in *Reischauer* were not exactly the same issue that Plaintiff presents in this case regarding Ramadan meals. The facts show that KCF accommodated *Reischauer* after he made a late request for Ramadan meals. At this point, the record is not clear why Defendant imposed a sign-up date for Ramadan meals at KCF, and why she would not accommodate Plaintiff's late request. In the opinion of the undersigned, these issues remain unanswered and are more appropriate for trial.

Accordingly, it is recommended that the Court deny Defendant's Motion for Summary Judgment (ECF No. 26) and Plaintiff's motion for Summary Judgment (ECF No.32).

NOTICE TO PARTIES: Objections to this Report and Recommendation must be served on opposing parties and filed with the Clerk of the Court within fourteen (14) days of receipt of this Report and Recommendation. 28 U.S.C. § 636(b)(1)(C); Fed. R. Civ. P. 72(b); W.D. Mich. LCivR 72.3(b). Failure to file timely objections constitutes a waiver of any further right to appeal. *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981). *See also Thomas v. Arn*, 474 U.S. 140 (1985).

 /s/ Timothy P. Greeley
TIMOTHY P. GREELEY
UNITED STATES MAGISTRATE JUDGE

Dated:   June 18, 2018

11